FILED

2011 Nov-30  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **AMANDA L. LOGGINS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:09-cv-1897-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Amanda L. Loggins ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **REMAND** and **REVERSE** the decision denying benefits.

### I. Procedural History

Plaintiff filed her applications for Title II disability insurance benefits and

Tile XVI Supplemental Security Insurance ("SSI") on April 30, 2007, alleging a disability onset date of November 1, 2007[1], from "colon disease; spastic colon; nerves, anxiety." (R. 66, 121). Plaintiff's disability report alleged also that she is unable to work because she "hurt[s] all the time. If I stand for long periods I hurt a lot. I'm always going to the hospital to try to get doctors to figure out what is wrong with me." (R. 88). After the denial of her applications on June 15, 2007, (R. 41), Plaintiff requested a hearing before the ALJ on July 3, 2007, (R. 49), which occurred a year later on August 25, 2008, (R. 315). At the time of the hearing, Plaintiff was 28 years old and had a high school diploma. (R. 318, 320). Her past relevant work included light and unskilled work as a waitress and cashier. (R. 332). Plaintiff has not engaged in substantial gainful activity since November 1, 2007. (R. 74).

   The ALJ denied Plaintiff's claims on January 28, 2009. (R. 18). The denial became the final decision of the Commissioner when the Appeals Council refused to grant review on July 25, 2009. (R. 7). Plaintiff then filed this action for judicial review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

---

[1]Plaintiff originally alleged a disability onset date of January 15, 2004, (R. 66), but later amended it to November 1, 2007, (R. 74).

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Where, as here, Plaintiff alleges disability because of pain, she must also satisfy the pain standard.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically, Plaintiff must meet the *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985), standard ("*Hand* standard"), which

requires (1) evidence of an underlying medical condition and either

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find her disabled unless the ALJ properly discredits her testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.

> Implicit in this rule is the requirement that such articulation of
> reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ fails

to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the

ALJ's reasons are not supported by substantial evidence, the court must accept as

true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

In light of Plaintiff's contentions, the obvious starting point here is the

ALJ's decision.  In that respect, the court notes that, performing the five step

analysis[2], initially, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since her alleged onset disability date of November 1,

2007, and therefore met Step One.  (R. 23).  Next, the ALJ acknowledged that

Plaintiff's combination of severe impairments of "residuals of umbilical hernia

repair, residuals of lysis of abdominal adhesions following remote removal of IUD

from the colon; ovarian cysts, diverticulosis; gastroesophageal reflux disease,

---

[2] The Commissioner must determine in sequence:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals one listed by the Secretary;(4) whether the claimant is unable to perform his or her past work; and (5) whether the claimant is unable to perform any work in the national economy.  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).

obesity, depressive disorder, history of anxiety disorder, and chronic pain

disorder" met Step Two.  (R. 24).  Having determined that Plaintiff met Step Two,

the ALJ proceeded to the next step and found that Plaintiff did not satisfy Step

Three since Plaintiff's impairments or combination of impairments neither met nor

equaled the requirements for any listed impairments.  (R. 24-25).  Although he

answered Step Three in the negative, consistent with the law, *see McDaniel*, 800

F.2d at 1030, the ALJ proceeded to Step Four where he determined that Plaintiff

> has the [RFC] to perform a wide range of at least light work with the
> following limitations.  Mentally, she has the limitations assessed by
> Dr. Haney in October 2008:  moderate impairment of ability to use
> judgment in detailed or complex work-related decisions,
> understanding/remembering/carrying out detailed or complex
> instructions, maintaining attention/concentration/pace for periods of
> at least two hours, maintaining social functioning, and maintaining
> activities of daily living, and having only mild impairment of all other
> basic mental functions including responding appropriately to
> supervisors/coworkers/customers and other members of the general
> public, carrying out simple one and two step work-related decisions,
> and dealing with changes in a routine work setting.  Physically, she
> has the restrictions assessed by Dr. Gulati in December 2008:  she can
> frequently lift and/or carry up to 50 pounds and occasionally lift
> and/or carry up to 100 pounds.  She can sit two hours at a time, but a
> total of four hours in an 8-hour workday, stand one hour at [a] time
> for a total of two hours, and walk for one hour at a time for a total of
> two hours.  She can continuously reach, handle, finger, feel, and
> push/pull with both hands.  She can continuously operate foot
> controls with both feet.  She can continuously balance and frequently
> climb stairs/ramps, stoop, kneel, crouch, and crawl, but cannot climb
> ladders/scaffolds.  She can continuously work around moving
> mechanical parts, and frequently operate a motor vehicle and work in

humidity/wetness/pulmonary irritants/extreme cold or heat/vibration, but should not work at unprotected heights.  She should work in a quiet environment.

(R. 25-26).  Further, the ALJ determined that Plaintiff is unable to perform her past relevant work as a waitress and cashier.  (R. 29).  Lastly, in Step Five, the ALJ considered Plaintiff's age, education, work experience, RFC, and impairments, and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (R. 29).  Because the ALJ answered Step Five in the negative, the ALJ determined that Plaintiff is not disabled.  (R. 29-30); *see also McDaniel*, 800 F.2d at 1030.

## V.  Relevant Background

The court turns now to the relevant portions of Plaintiff's extensive medical and surgical history, which, for this determination, started on March 27, 2002, when six weeks postpartum of her second child, Plaintiff received an intrauterine device ("IUD") at Athens-Limestone Hospital.  (R. 164).  Three months later, in June 2002, an ultrasound examination confirmed a positive pregnancy test Plaintiff received earlier.  *Id.*  Unfortunately, the ultrasound failed to detect the presence of the IUD.  *Id.*  This failure to detect the IUD is at the core of Plaintiff's subsequent medical issues.

Six weeks after a normal pregnancy and delivery of her third child, Plaintiff

complained of abdominal pain.  *Id.*  Thereafter, on January 14, 2004, at age 24 years, Plaintiff received a laparoscopic assisted vaginal hysterectomy with extensive lysis of adhesions and right salpingectomy, performed by gynecologist Dr. Oliver Carlota ("Dr. Carlota").  (R. 166).  Because the "uterine specimen did not contain the IUD," two days later, Drs. Carlota and Paul Noel ("Dr. Noel") performed an exploratory laparotomy, found the migratory IUD, and removed it "from an inflammatory mass in the sigmoid colon area."  *Id.*  On February 5, 2004, approximately two weeks after her discharge, Plaintiff reported that the pain was "better," (R. 187), but three weeks later, on February 26, 2004, (R. 186), and again on March 11 and 22, 2004, (R. 184), Plaintiff complained that she was "not getting any better" and that she had stomach cramps and "severe pain," (R. 184).

A month later, on April 28, 2004, Dr. Noel again admitted Plaintiff for evaluation of her lower abdominal pain and occasional stool habit changes.  (R. 188).  A CT scan of Plaintiff's abdomen and pelvis "showed some possible diverticular changes appreciated in the colon."  *Id.*  The next day, on April 29, 2004, Dr. Carlota examined Plaintiff and opined that she had "chronic low abdominal pain and GI dysfunction associated with lower GI bleeding.  Symptoms possibly secondary to intra-abdominal adhesions, sigmoid colitis, and/or narrowing at the site of previous IUD removal."  (R. 190).  Plaintiff received

intravenous antibiotics and was discharged on May 1, 2004, after she reported

improvement in her pain.  *Id.*  Approximately two weeks later, on May 11, 2004,

Dr. Noel re-evaluated Plaintiff and found that she had "mild tenderness

appreciated in the epigastrium and left lower quadrant upon deep palpation."  (R.

194).  He prescribed Plaintiff Nexium for "probably mild gastritis" and Lorcet for

pain.  (R. 194-95).

Five months later, on October 5, 2004, treating physician Dr. William S.

Pennington, Sr. referred Plaintiff to Dr. Prabhakara Ravi ("Dr. Ravi") to evaluate

Plaintiff's "pain in colon."  (R. 219).  Three days later, on October 8, 2004, Dr.

Ravi admitted Plaintiff to Athens-Limestone Hospital's outpatient surgical unit,

performed a colonoscopy and polypectomy, and diagnosed Plaintiff with

diverticulosis, internal hemorrhoids, and rectal polyp.  (R. 217).

Approximately two weeks later, on October 27, 2004, Dr. Ravi admitted

Plaintiff again to Athens-Limestone's outpatient surgical unit and performed a

laparoscopy and lysis of adhesions to treat Plaintiff's "chronic abdominal pain

secondary to multiple intra-abdominal adhesions."  (R. 215).  The procedure

revealed

> [M]ultiple dense intra-abdominal adhesions in the lower part of the
> abdomen.  Loops of bowel were stuck to the anterior abdominal wall.
> [ ].  Following this, the adhesions were then carefully divided taking

great care to avoid injury to the bowel.  Small windows were created
in the adhesions and then these adhesions were carefully divided
using the Harmonic scalpel."

(R. 215).  The next day, Plaintiff was admitted through the emergency room

complaining of abdominal pain and distention.  (R. 212).  A CT scan of the

abdomen revealed "post surgical changes in the anterior abdominal wall and

inflammatory process primarily involving the mesentery and the pelvis and a small

sliding hiatal hernia."  *Id*.  Dr. Ravi evaluated Plaintiff  and observed peri-

umbilical tenderness and inflammation.  *Id*.  Dr. Ravi treated Plaintiff for

constipation, which improved the abdominal distension and pain.  *Id.*  On

November 2, 2004, Dr. Ravi discharged Plaintiff and prescribed the antibiotic,

Ceclor, pain reliever, Darvocet, and stool softener, Surfak.  *Id.*  Approximately

two weeks later, on November 17, 2004, Dr. Ravi prescribed Plaintiff Lortab for

pain.  (R. 214).

Three months later, on February 24, 2005, Plaintiff received a CT scan of

the abdomen which revealed a "large sliding hiatal hernia."  (R. 225).  On

February 28, 2005, Plaintiff received a upper gastrointestinal series that revealed

also a large hiatal hernia and gastroesophageal reflux.  (R. 224).

Dr. Ravi evaluated Plaintiff further approximately two years later, on

January 15, 2007, and performed a colonoscopy that confirmed Plaintiff's

diagnosis of "diverticulosis, spasm of the sigmoid and descending colon areas."
(R. 241).  Four months later, on May 17, 2007, Dr. William Pennington, Jr.
performed an "[e]xploratory laparoscopy, lysis of adhesions, evaluation of ovarian
cyst, with intraoperative consultation [ ], and DualMesh repair of umbilical
hernia."  (R. 268).  The operative report notes further that "[t]here were adhesions
of the small bowel in the midline to the anterior abdominal wall involving the
lower portion of the umbilical hernia and then more distally.  These were taken
down with sharp dissection using a 0 degree angle scope, with no injury to the
bowel wall or serosa." *Id*.  The ovarian cyst was found to be functional and
benign. *Id.*

In addition, Dr. Pennington, Sr. treated Plaintiff from September 2004
through May 2007, and repeatedly noted Plaintiff's consistent complaints of
abdominal pain, which he often treated with Lortab.  (R. 229-37; 242-63).  Also,
on September 6, 2005, Dr. Pennington, Sr., referred Plaintiff to a pain clinic, (R.
231), although over a month later, on October 24, 2005, Dr. Pennington, Sr. noted
"still no call from the pain clinic."  R. 230.

## VI.  Analysis

Having outlined Plaintiff's medical history and the ALJ's findings, the court
turns now to Plaintiff's contentions.  Specifically, Plaintiff contends that the

"ALJ's RFC for a wide range of light work is internally inconsistent and not based on substantial evidence," doc. 11 at 8, because the ALJ (1) relied "exclusively" on physician Dr. Prem Gulati's ("Dr. Gulati") and psychologist Dr. John Haney's ("Dr. Haney") "findings in determining an [sic] RFC [ ] for the entire period," doc. 11 at 6, (2) assigned great weight to Dr. Gulati's opinion, even though it was inconsistent with both light and sedentary work, *id.* at 7-8, and (3) purportedly failed to "reconcile the requirement for a quiet work environment with provisions for avoiding vibration and continuously working around moving mechanical parts," *id.* at 8.  For the reasons stated below, the court agrees with Plaintiff that the ALJ's decision is not supported by substantial evidence.

A.    *ALJ erred in assigning Plaintiff's RFC because it is not supported by substantial evidence.*

Based on its careful review of the entire record, the court concludes that the ALJ erred by essentially disregarding Plaintiff's extensive medical history because it predates Plaintiff's alleged onset disability date.  Specifically, because Plaintiff only provided medical records through November 2, 2007, for an alleged onset disability date of November 1, 2007, (R. 74-75), the ALJ ordered post-hearing consultative examinations with Drs. Gulati and Haney, (R. 294, 299), which, of course, the ALJ is permitted to do.  However, Plaintiff takes issue with the ALJ

and contends that the ALJ erred by relying "exclusively" on the post-hearing consultative evaluations to determine Plaintiff's RFC for the "entire period at issue." Doc. 11 at 6. The court agrees.

While the ALJ is obligated to order post-hearing consultative examinations, the ALJ must nonetheless ensure that he relies on these examinations only when their findings are warranted. Here, even a cursory review of Plaintiff's medical history easily shows that Dr. Gulati's findings, which the ALJ gave "great weight,"[3] have no factual support. Remarkably, even with Plaintiff's numerous abdominal surgical procedures, including a hernia repair, Dr. Gulati determined that Plaintiff could "do sitting, standing, lifting and carrying jobs without any difficulty," *id*. (emphasis added), frequently lift or carry up to 50 pounds, (R. 302), and occasionally lift or carry 51-100 pounds, *id*. Interestingly, Dr. Gulati's opinion of Plaintiff's ability to lift is consistent with someone who has the capacity to perform heavy work, which involves "lifting no more than 100 pounds

---

[3] The ALJ gave

> great weight to Dr. Gulati's opinion that the [Plaintiff] could perform a wide range of at least medium exertional activity since this assessment is not only consistent with his examination and observations in December 2008, but also with the balance of the record showing little if any abnormality that could account for [Plaintiff's] reported pain.

(R. 28) (emphasis added).

at a time with frequent lifting or carrying of objects weighing up to 50 pounds."

20 C.F.R. § 404.1567.  This finding is simply not supported by the record and, in

fact, is belied by the vocational expert's testimony that Plaintiff's past employment

history consisted of light work as a waitress and cashier.  (R. 332).  Indeed, it is

inconceivable that a person with Plaintiff's history of hernia repair, abdominal

surgeries, and chronic pain syndrome, and no history of medium or heavy work, is

capable of performing heavy work, as Dr. Gulati opined, or even being able to

frequently lift 50 pounds, let alone occasionally lift 100 pounds.  Therefore, the

ALJ's decision to give Dr. Gulati's opinion "great weight" is unwarranted.

Perhaps realizing the unreasonableness of Dr. Gulati's opinion that Plaintiff

can perform heavy work, the ALJ downgraded it first to "at least medium

exertional activity," (R. 28), and then downgraded it further by finding instead that

Plaintiff could perform "a wide range of at least light work"[4] with limitations.  (R.

25).  Although the court appreciates the ALJ's recognition of the error in Dr.

---

[4] Light work requires

lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds.  Even though the weight lifted may be very
little, a job is in this category when it requires a good deal of walking or standing,
or when it involves sitting most of the time with some pushing and pulling of arm
or leg controls.  To be considered capable of performing a full or wide range of
light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567.

Gulati's opinion and attempted to eliminate this error by downgrading Dr. Gulati's findings, unfortunately, like Dr. Gulati, the ALJ's finding that Plaintiff can perform light work is also not supported by Dr. Gulati's findings.  Specifically, Dr. Gulati opined that Plaintiff could stand 2 hours in an 8 hour workday and walk 2 hours in an 8 hour workday, a total of 4 hours of standing or walking in an 8 hour work day.  (R. 303).  This finding does not meet the light work standard, which states that "[t]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10:  Titles II and XVI:  Determining Capability to Do Other Work -- The Medical-Vocational Rules of Appendix 2 at 5, http://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html.  In other words, the ALJ's finding that Plaintiff can perform light work is not only inconsistent with Dr. Gulati's own determination that Plaintiff can do heavy work, but is also contrary to Dr. Gulati's objective data, which, in fact, establishes that Plaintiff is incapable of performing light work.  Therefore, the ALJ's decision to assign "great weight" to Dr. Gulati's opinion is inconsistent with the record as a whole and not supported by substantial evidence.

Likewise, the ALJ erred by failing to fully account for Dr. Haney's opinion. Specifically, although the ALJ stated he gave "great weight to Dr. Haney's opinion regarding the claimant's mental functioning," (R. 25), and incorporated

criteria used to rate the severity of mental impairments "into work-related functions in the [RFC] assessment," (R. 25), the ALJ omitted incorporating Dr. Haney's opinion regarding Plaintiff's physical impairments into the RFC assessment.  As Dr. Haney opined, chronic pain and other problems impacted Plaintiff's ability to do work:

> [Plaintiff] will require further medical assessment and treatment for her multiple physical complaints. [ ]  <u>[Plaintiff's] ability to function in most jobs appeared moderately impaired by chronic pain and other physical problems</u>.  The patient's condition will probably remain unchanged in the next six to twelve months.  All of the patient's statements were regarded as truthful.

(R. 295) (emphasis added).  Because Dr. Haney's opinion regarding Plaintiff's physical capabilities are consistent with the record, the ALJ erred by not considering them in assigning Plaintiff's RFC.  Therefore, this court finds that the ALJ's opinion that Plaintiff has the RFC to perform light work is not substantially supported by the record.

B.     *The Pain Standard*

Reversal is warranted also because the ALJ failed to properly apply the pain standard and his articulated reasons for refusing to completely credit Plaintiff's pain testimony is not supported by substantial evidence.  As a threshold matter, the court notes that the ALJ relied primarily on Dr. Gulati's December 8, 2008,

evaluation, (R. 301), to find that Plaintiff failed to meet the pain standard.

Specifically, the ALJ gave "great weight" to Dr. Gulati's findings and opined that

> the balance of the record showing little if any abnormality that could
> account for [Plaintiff's] reported pain, especially since November
> 2007, remembering that [Plaintiff] has not been on medications for
> many months prior to that and yet functioned quite well at both the
> physical and psychological consultative examinations performed in
> late 2008.

(R. 28) (emphasis added).  Based primarily on Dr. Gulati's evaluation, the ALJ

found that Plaintiff did not have "evidence of an underlying medical condition,"

the first requirement of the pain standard, *Hand*, 761 F.2d at 1548, because the

record revealed "little if any abnormality" that could account for Plaintiff's pain,

(R. 28).

This finding, however, is not substantially supported by the record and, in

fact, is inconsistent with Dr. Gulati's diagnosis for several reasons.  First, Dr.

Gulati determined that Plaintiff suffered from abdominal pain and suggested

possible causes:  "**IMPRESSION:**  Abdominal pain of undetermined etiology,

possibly irritable bowel syndrome, spastic colon versus diverticulitis even though

there is no substantiation."  (R. 301).  Although the ALJ gave Dr. Gulati's opinion

"great weight," the ALJ apparently ignored Dr. Gulati's finding that Plaintiff's

pain was possibly caused by "irritable bowel syndrome, spastic colon versus

diverticulitis." *Id.*  Contrary to the ALJ's findings, Dr. Gulati's opinion does not suggest that Plaintiff has "little if any abnormality" and, in fact, suggests the exact opposite.  Second, Plaintiff's diagnoses, based on objective and reliable medical evidence and testing, of diverticulitis, (R. 217, 241), intra-abdominal adhesions, (R. 215), internal hemorrhoids, (R. 217), large hiatal hernia, (R. 224), spasm of the sigmoid and descending colon, (R. 241), and ovarian cysts, (R. 245), belie the ALJ's finding the Plaintiff has "little if any abnormality" that could cause her pain. Finally, it is unreasonable for the ALJ to find that Dr. Gulati's single disability physical examination would conclusively reveal the cause of Plaintiff's pain when several physicians and years of testing, procedures, and surgeries could not. Therefore, based on Plaintiff's diagnoses, including Dr. Gulati's impression of "[a]bdominal pain of undetermined etiology, possibly irritable bowel syndrome, spastic colon versus diverticulitis," (R. 301), this court finds that Plaintiff meets the first requirement of the pain standard, and that the ALJ's contrary finding is not supported by substantial evidence.

In addition to finding that the medical evidence does not support Plaintiff's complaints of pain, the ALJ also discredited Plaintiff's complaints of pain. Specifically, regarding Plaintiff's credibility, the ALJ opined that "the [Plaintiff's] medically determinable impairments could reasonably be expected to produce the

alleged symptoms, but that the [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible." (R.

27). This finding is also not supported by substantial evidence. As discussed

above, the record supports a finding that Plaintiff suffers from considerable pain

resulting from her conditions. Indeed, Drs. Gulati and Haney, whose opinions the

ALJ assigned "great weight," found Plaintiff's testimony of pain truthful and

acknowledged that Plaintiff suffered from abdominal pain. (R. 295, 301). Dr.

Gulati's diagnosis of "abdominal pain of undetermined etiology" implies that he

found Plaintiff truthful. (R. 301). As to Dr. Haney, he opined that

> [Plaintiff] will require further medical assessment and treatment for
> her multiple physical complaints. [ ]  <u>[Plaintiff's] ability to function in
> most jobs appeared moderately impaired by chronic pain and other
> physical problems.</u>  The patient's condition will probably remain
> unchanged in the next six to twelve months.  <u>All of the patient's
> statements were regarded as truthful.</u>

(R. 295) (emphasis added). In other words, the ALJ's opinion that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible," (R. 27), are inconsistent with Dr. Haney's

findings that Plaintiff is "moderately impaired by chronic pain." (R. 295).

Moreover, the ALJ erred in parceling out Dr. Haney's findings because they

are significant and substantially supported by the record as a whole. For example,

treating physician, Dr. Pennington, Sr., diagnosed Plaintiff with chronic pain syndrome, treated her for severe pain with narcotic pain relievers, referred her to several specialists who evaluated Plaintiff and performed exploratory and treating surgeries to diagnose and treat her pain, and ordered numerous diagnostic tests.  In fact, the record is void of <u>any</u> medical opinion stating that Plaintiff's pain testimony is not credible, which indicates that her many physicians also found her complaints of pain credible.

As further support of his finding that the Plaintiff was not entirely credible, the ALJ erroneously concluded that Plaintiff "reported to treating physicians that her abdominal pain only occurred off and on (as she did in May 2005, Exhibit 9F), treating physicians were generally at a lost to explain her reported pain other than to diagnose chronic pain syndrome with examination rarely even showed abdominal tenderness." (R. 28).  While Plaintiff, in fact, reported to Dr. Pennington, Sr. on May 6, 2005, that her pain was "off and on for two to three days," (R. 234), one such isolated report does not negate the full record, which is replete with severe reports of pain.  In fact, on her next visit to Dr. Pennington, Sr., on May 17, 2005, the treatment note states "pain abd[omen] [ ] see Dr. Ravi.  Has had for 2 yrs - Lortab 7.52 30." (R. 234).  Then again, on July 28, 2005, Dr. Pennington, Sr.'s treatment notes state, "abd pain again.  Pain & tenderness lower

abd.  Dr. Ravi saw her & did abd MRI.  Urine was normal.  Dx adhesions.  Rx

Lortab 7.5-30."  (R. 234).  Further, the ALJ's opinion that Plaintiff's "examination

rarely even showed abdominal tenderness" is unfounded because the record

contains Plaintiff's physicians' multiple reports of abdominal pain upon

examination.  (R. 186, 187, 191, 212, 231, 234, 236, 237, 290).

Next, the ALJ attacked Plaintiff's credibility regarding injuries that Plaintiff

reported after falling off a ladder, (R. 261), and carrying furniture.  (R. 259).[5]

Regarding those injuries, the ALJ stated

> In response to a lot of these reports of 'injuries' the [Plaintiff] was
> given pain medication and there is no evidence of corroborating
> evidence in most of these cases, but she did report the activities that
> led to the injuries, suggesting that the [Plaintiff] was in fact much
> more active, even on a daily basis, than she has otherwise reported,
> and which is <u>very inconsistent with her allegation of almost constant</u>
> <u>and severe pain</u>.

(R. 28) (emphasis added).  This assessment is not an accurate account of Plaintiff's

complaints of pain.  In fact, Dr. Gulati's disability report, to which the ALJ

assigned "great weight" and cited in his opinion, (R. 28), stated that Plaintiff's

"pain is intermittent and lasts for a couple of hours but may last anywhere from 15

---

[5] Although the ALJ asserts also that Dr. Pennington, Sr.'s treatment notes from
November 2006 state that Plaintiff injured herself while unpacking a truck, this court disagrees
that this is an accurate translation of the note.

minutes to 4-5 hours and goes away by itself." (R. 299).[6]  Plaintiff also reported to treating physician, Dr. Pennington, Sr., that her pain is "off and on," (R. 234), as even the ALJ noted in his opinion, (R. 28).  Therefore, the ALJ's conclusion regarding Plaintiff's allegation of constant pain is also unfounded.

Lastly, in order to discredit Plaintiff's testimony, the ALJ noted the "[a]lthough [Plaintiff's] primary care physician, Dr. Pennington Sr., thought that [Plaintiff] might benefit from a pain clinic as early as 2005, she never did go to one." (R. 28).  However, the treatment notes reflect that on September 6, 2005, Dr. Pennington, Sr., "referr[ed] [Plaintiff] to Tenn. Valley Pain Center.  Pain Center will contact pt." (R. 231).  Following that visit, Dr. Pennington, Sr., noted during several subsequent visits that the pain clinic failed to respond to his referral:  September 19, 2005, "pain clinic will contact pt in another week or so," (R. 230); October 13, 2005, "patient will call [ ] pain clinic today," *id*.; October 24, 2005, "still no call from pain clinic," *id*.; November 8, 2005, "no word from the pain clinic in Decatur," *id*.  Contrary to the ALJ's contentions, the record evidence establishes unequivocally that Plaintiff never made it to the pain clinic through no fault of her own.

_____

[6] The ALJ referenced Plaintiff's use of "Lortab/Lorcet on a chronic basis even though a number of doctors noted dependency/abuse issues." (R. 28).  Although speculative, the ALJ seems to suggest that Plaintiff's alleged "injuries" were attempts to continue her narcotics abuse.

In sum, the ALJ did not properly discredit Plaintiff's pain testimony and the ALJ's opinion that Plaintiff's complaints of pain are not "entirely credible" is not substantially supported by the medical evidence.  Accordingly, as a matter of law, Plaintiff's pain testimony is accepted as true, and she is disabled within the meaning of the SSA and entitled to the benefits for which she applied.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence, and that the ALJ failed to apply proper legal standards in reaching this determination.  The Commissioner's final decision is, therefore, **REVERSED** and **REMANDED**.  A separate order in accordance with this memorandum of decision will be entered.

Done the 30th day of November, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE